THE STATE v. JENNINGS, *Appellant.*

### Division Two, May 12, 1896.

1. **Criminal Practice**: CHANGE OF VENUE: WAIVER. Where it appears that a cause was, with the consent of the prosecuting attorney and the defendant, remanded from the county to which it had been taken by change of venue to the county in which the indictment was found, and no exception was taken to the action of the court, though the record does not show whether a petition duly verified and supported had been filed by defendant, any objection to such change will be deemed waived.

2. **Criminal Law**: MANSLAUGHTER IN SECOND DEGREE. A conviction of manslaughter in the second degree, *held*, supported by the evidence.

*Appeal from Laclede Circuit Court.*—HON. C. C. BLAND, Judge.

AFFIRMED.

*R. F. Walker*, attorney general, for the state.

GANTT, P. J.—The defendant was indicted at the November term, 1891, of the Laclede county circuit court for murder in the second degree, alleged to have been committed by him on December 24, 1889. He succeeded in obtaining continuances until the August term, 1894, whereupon he obtained a change of venue to Pulaski county and was recognized to appear in that court. At the September term of the Pulaski county circuit court the cause was remanded to Laclede county and finally at the August term, 1895, of the circuit court of Laclede county, six years after the alleged offense was committed, the defendant was arraigned, entered his plea of not guilty, was tried and convicted of manslaughter in the second degree and sentenced to the penitentiary.

No counsel appear in this court for the defendant and we have been left to examine the record to determine if prejudicial error was committed against him.

The testimony upon the part of the state shows that on the night of December 24, 1889, the defendant and the deceased, who was a mere boy, attended a Christmas tree at the residence of A. Wheeler, in Laclede county, Missouri; that about 9 o'clock that night they left Wheeler's and went to the residence of a Mr. Burns, where a dance was in progress. It appears that young Carter and his companions, upon their arrival at Burns', were making considerable noise upon the outside, and were directed by somebody to leave; that young Carter and a brother of the defendant had had a fuss or quarrel of some trival character; that Carter and his companions started in the direction of their horses, which were hitched at the yard fence, when the defendant, who had come out of the house, and who had heard the request made of Carter to leave, said "G—d d—m him, I will fix him;" that the defendant ran up in the direction of young Carter, picked up a rock and threw it, striking Carter in the left breast over the heart; that Carter turned then and went as rapidly as a man in his intoxicated condition could in the direction of his horse; that the defendant followed him several steps, picked up another rock, and threw it, striking Carter in the back of the neck, saying at the time he would show them who was running that dance. After the blow received from the last rock upon the back of the neck, young Carter fell and almost instantly died. It is shown that when defendant was advised that Carter was dead, he remarked that they couldn't prove who did it.

At the *post-mortem* examination, held the next day, it was discovered that the neck had been broken between the two vertebrae, known as the atlas and axis,

and the physician in charge of the *post-mortem* testified that death was occasioned by the blow upon the back of the neck.

The testimony upon the part of the defendant tended to show that the night was dark and that there was a general fuss or row outside of the house at the time the killing occurred. One of the witnesses testified that the defendant did not throw a rock, but that he caught him and held him to prevent him from doing so; that Burns, the person at whose house the dance was being held, was out of doors in the crowd with a club, and that Burns threw the club, but after young Carter had been knocked down and killed. The defendant, testifying in his own behalf, denied striking Carter that night and also denied making the statement that they could not prove who did it.

In rebuttal, the state introduced Burns as a witness, who testified that he did not strike nor throw the club he had that night at the deceased, but that at the time the deceased was killed he was at the southeast corner of the house, some distance away, driving Lum Farmer, one of the boys who was in the crowd with the deceased that night, out of the yard, and that when Farmer got on his horse to leave he threw the club at him. Lum Farmer was also introduced and corroborated the testimony of Burns, as did also witness McGuire.

The court instructed the jury on murder in the second degree, manslaughter in the second and fourth degrees, justifiable homicide, credibility of the witnesses, reasonable doubt, and presumption of defendant's innocence. No instructions were asked by defendant.

I. The defendant, in his motion in arrest, alleged that the Laclede county circuit court had no jurisdiction of the cause. It is obvious this objection could

only apply to the time of the trial, or rather to the steps taken after a change of venue had been awarded to Pulaski county, because without doubt the offense was committed in Laclede county, the circuit court of Laclede county had jurisdiction of all felonies committed in that county, and the indictment was preferred by a grand jury of that county duly and regularly impaneled in said court at a regular term thereof. The objection can only relate, then, to the retransfer of the cause to the Laclede court by the Pulaski county circuit court.

It appears by an order of record that at the September term, 1894, the circuit court of Pulaski county ordered the cause changed to Laclede and this order was made by the consent of the prosecuting attorney and defendant in open court. The record entry does not recite whether a petition duly verified and supported had been filed by defendant, and we can only presume in the absence of any other supposed defect in the proceedings prior to this order, that it is the failure of the record to show the petition and supporting affidavits upon which defendant bases his objection. But as was said in *State v. Taylor*, 132 Mo. 282, inasmuch as the Pulaski court unquestionably had jurisdiction of the cause, and such an order was clearly within its authority, every presumption would be and must be indulged in favor of its action. No exception whatever was made to the action of the court and being a matter of exception we entertain no doubt of the right of the defendant to waive it, and having waived it he can not now be heard to raise the point in this court. *State v. Taylor*, 132 Mo. 282.

II. A careful scrutiny of the whole evidence discloses no error whatever in the admission or rejection of evidence.

State v. Jennings.

III.   The evidence was amply sufficient to justify the jury, if they believed it, in finding defendant killed the boy, William D. Carter, by breaking his neck with a rock.   The deceased was described by all the witnesses as a boy.   Notwithstanding the boys with whom he was associated that night were somewhat noisy, this afforded defendant, who was not the proprietor of the house, no excuse for killing him.  He had already struck him with one stone and the boy was retreating when he hurled the rock which broke his neck.   It was a most cruel and unnecessary homicide.   No error appears in the instructions; none are pointed out.   The judgment is affirmed.   SHERWOOD and BURGESS, JJ., concur.